IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FREDERICK CULLEN** | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **SELECT MEDICAL CORP.**, | : | No. 17-3479 |
| *Defendant*. | : | |

# MEMORANDUM

PRATTER, J.                                                                                              AUGUST 17, 2018

In 2015, Select Medical Corporation began plans to acquire another company. As part of the acquisition, management developed a strategy to integrate the two companies, which involved firing around 100 employees. One of those employees was Frederick Cullen, the plaintiff in this case. While Select Medical was finalizing the acquisition, Mr. Cullen developed a serious condition that required heart surgery. Shortly after his return to work, Select Medical implemented the plan that had been developed months before his medical condition arose. Mr. Cullen was fired, along with nearly 100 other employees.

Mr. Cullen claims that he was fired because of his medical condition, and not (as Select Medical contends) as part of the acquisition. Select Medical has filed a motion for summary judgment, claiming that no reasonable jury could conclude that Mr. Cullen has shown that Select Medical's acquisition plan was a pretext for his firing. The motion is meritorious because Mr. Cullen's termination had been planned months before the onset of his illness, and he has presented no evidence that he was fired because of his medical condition. Therefore, no reasonable jury could find that Mr. Cullen was discharged as a result of his disability or leave of absence.

1

## BACKGROUND

Mr. Cullen worked in Select Medical's real estate group for 19 years. He received good performance reviews and was never formally disciplined. In early 2015, the company's management was considering the acquisition of Physio, a rehabilitation company whose operations had substantial overlap with those of Select Medical.

As part of the acquisition, Select Medical reorganized the in-house leadership structure and ultimately fired 89 employees. In an internal memo written in July 2015, Mr. Cullen's manager, Randall Watts, proposed how his division could adjust to an acquisition. Mr. Watts explained the strengths and weaknesses of each employee, along with how he planned to change the structure of the department. Regarding Mr. Cullen, he wrote: "Recommendation: . . . I would replace Fred [Cullen] with an individual who can provide all the necessary skill set to" accomplish the job. *See* July 2015 Memo at 2. Mr. Cullen earned $206,550 per year, including his bonus, but Mr. Watts projected that the new hire could be paid just $120,000. Mr. Watts posed that the company could use the extra $86,550 to hire a second employee. Mr. Watts wrote about the advantages of having two employees do Mr. Cullen's job along with additional tasks.

Four months later, in November 2015, Mr. Cullen started experiencing medical problems. By December, they became serious enough to require heart surgery, which kept him out of work until March 2016. Upon his return, he came into the office later on three days a week to attend cardiac rehabilitation, and he left early to work from home because of his low energy levels. Select Medical always allowed him to do so and never denied him leave.

While Mr. Cullen was experiencing these medical issues, the Physio acquisition continued to progress. On March 4, 2016, Select Medical officially acquired Physio, and Mr. Cullen was fired three weeks later. All parties agree that the July 2015 memo was executed

exactly as written, and nearly 100 employees were fired between March and May 2016, during the same time period as Mr. Cullen.

LEGAL STANDARD

**I.    Summary Judgment Standard of Review**

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record,

including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c).

Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## II. *McDonnell Douglas* Burden Shifting

Mr. Cullen brings two main claims. He brings one claim under the Americans with Disabilities Act (ADA),[1] and another claim for retaliation under the Family Medical Leave Act (FMLA).

Summary judgment motions such as these require application of the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2] This test first places the burden on the plaintiff to establish a prima facie case. "To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

---

[1] Mr. Cullen also brings a claim under the Pennsylvania Human Relations Act (PHRA). All parties agree that this claim rises and falls with the ADA claim. The PHRA is evaluated under the same legal standard as the ADA. *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996). Therefore, the Court's analysis of the PHRA claim is the same as the Court's ADA analysis.

[2] "Because FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012). As a result, FMLA retaliation claims based on circumstantial evidence are assessed under the *McDonnell Douglas* burden-shifting framework. *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 151–52 (3d Cir. 2017); *see also Lichtenstein*, 691 F.3d at 301–02.

4

Similarly, to establish the prima facie case for retaliation under the FMLA, Mr. Cullen must show that (1) he is protected under the FMLA; (2) he suffered an adverse employment action; and (3) a causal relationship exists between the decision to terminate him and the exercise of his FMLA rights. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004).

After a plaintiff makes a prima facie showing, "the burden shifts to the employer to provide a legitimate non-retaliatory reason for its conduct." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017). If the employer succeeds on this point, then "the burden shifts back to the plaintiff 'to convince the factfinder both that the employer's proffered explanation was false . . . and that retaliation was the real reason for the adverse employment action.'" *Id.* (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006)). Although the burden of *production* shifts under this analysis, the burden of *proof* always stays with the plaintiff. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

If the defendant can make this showing, Mr. Cullen then "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764; *see also Fakete v. Aetna, Inc.*, 308 F.3d 335, 339 (3d Cir. 2002).

In discrediting the defendant's proffered reason, the plaintiff cannot simply show that the defendant's decision was wrong or ill-conceived. The plaintiff must show that there is a genuine dispute as to whether discrimination motivated the defendant's actions. *Id.* at 765. In other words, the relevant inquiry is the perception of the decision-maker, not the plaintiff's view of his or her own performance. *Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991) (citations

omitted); *see also Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509 (3d Cir. 1993) (pretext turns on the qualifications and criteria identified by the employer, not the categories the plaintiff considers important).

## DISCUSSION

Select Medical's arguments on the causation element of Mr. Cullen's prima facie case overlap substantially with its pretext arguments. Given that the Court finds that Mr. Cullen has met the elements of the prima facie case, the Court will briefly discuss the first two steps of the *McDonnell Douglas* framework, before discussing the primary issue in dispute here: pretext.

### I. Prima Facie Case and Legitimate Non-Discriminatory Termination Reason

The Court finds that both the FMLA and ADA claims satisfy Mr. Cullen's burden to make a prima facie showing. Both sides agree that Mr. Cullen had a disability, took FMLA leave, and suffered an adverse employment action. *See Krouse*, 126 F.3d at 500 (outlining the ADA standard); *Conoshenti*, 364 F.3d at 146 (outlining the FMLA standard). The only dispute the parties have over the prima facie case is whether there was a causal connection between Mr. Cullen's employment termination and his disability or leave. This question bleeds into the "pretext" argument in many respects.

The "burden of establishing a prima facie case [of discrimination] is not onerous." *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978).

Taking all inferences in favor of Mr. Cullen, the Court concludes that, before hearing Select Medical's side of the story, a reasonable jury could find that Mr. Cullen's termination was

causally connected to his leave. Therefore, the Court finds this burden has been met. Given that both sides agree, at the second step of *McDonnell Douglas*, that Select Medical has articulated a legitimate, non-discriminatory reason for the termination (company-wide reorganization that was pre-planned), the burden shifts back to Mr. Cullen to show that a reasonable jury could find, by a preponderance of the evidence, that the proffered reason is mere pretext.

## II. Pretext

To prove pretext, Mr. Cullen must show that "retaliatory animus played a role in the employer's decision-making process and that it had a determinative effect on the outcome of that process." *Krouse*, 126 F.3d at 501. Mr. Cullen's arguments fall into four main categories: (1) that there was animus on the part of Select Medical, (2) that the firing was a poor business decision, (3) that the stories advanced by the employer's witnesses are inconsistent, and (4) miscellaneous arguments. The Court finds none of them sufficient to satisfy the pretext requirement, and grants the motion for summary judgment.

### A. Animus by Select Medical Employees

Mr. Cullen first tries to paint a picture of hostility towards him after he returned from leave. He points to four items that allegedly show animus toward him. But no reasonable jury could conclude from these facts that Select Medical's explanation is mere pretext.

*First,* he repeatedly points to Mr. Watts' comments in teleconference calls that Mr. Cullen would be out of work for four months. A factual assertion that Mr. Cullen was out of work (where the declarant did not express any *negative* view) cannot be evidence of discrimination — it is merely a statement of fact. Mr. Cullen has adduced no evidence that Mr. Watts made these comments in a discriminatory manner, nor has he produced any testimony that these statements evinced annoyance by his supervisor.

7

***Second,*** Mr. Cullen cites his own perception that Mr. Watts "seemed perturbed" at his time off. This is his best evidence of animus, which highlights the lack of animus exhibited by Select Medical. No other employees testified to animus, nor is there any other objective evidence of animus. Mr. Cullen's perception alone is insufficient to show pretext. *See Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 413 (E.D. Pa. 2000) (finding that the plaintiff's own perception is insufficient evidence of pretext when the supervisor had made no discriminatory remarks to the plaintiff). Mr. Watts never complained about Mr. Cullen's leave, denied his leave, or made any negative statements toward him. Even assuming the truth of Mr. Cullen's perception, nearly every supervisor would be perturbed at losing a top-level employee for multiple months and having to juggle schedules. Mr. Cullen's subjective impression does not rise to the level of actionable animus that undermines the reason for termination offered by Select Medical. Mr. Cullen's "unsupported belief that he was fired for discriminatory reasons 'falls far short of establishing pretext.'" *James v. Sutliff Saturn, Inc*., 468 Fed. App'x 118, 121 (3d Cir. 2012) (quoting *Sarullo v. U.S. Postal Serv*., 352 F.3d 789, 800 (3d Cir. 2003)).

***Third,*** Mr. Cullen points to statements by Select Medical representatives who mentioned in their depositions that dealing with employees on medical leave "can be a bit of a headache." Select Medical does not dispute this view as a general matter. Many, if not most, managers would classify medical leave as a headache. It is not easy to work around scheduling and work coverage, but that does not mean that an employer discriminated against the employee because of the leave, and it certainly does not mean that the employer's explanation was pretext. *See Jackson v. PLANCO*, 660 F. Supp. 2d 562, 580 (E.D. Pa. 2009) (rejecting a finding of pretext where the plaintiff was unable "to produce any evidence beyond his own 'belief' and speculation" that he was discriminated against).

*Finally,* Mr. Cullen points to deposition testimony by a Select Medical representative that managers, in some other hypothetical workplace, *could* have biases against employees in protected groups. This banal truism did not relate specifically to Select Medical, and it is irrelevant. *See Johnson v. Multi-Solutions, Inc.*, 493 Fed. App'x 289, 292 (3d Cir. 2012) ("An inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment."). Mr. Cullen's overall weak evidence of animus reinforces the conclusion that Select Medical's proffered reason was legitimate, and Mr. Cullen has failed to show pretext. *See Williams v. Rowan Univ.*, No. 10-cv-6542, 2014 U.S. Dist. LEXIS 171396, at *41–42 (D.N.J. Dec. 11, 2014) (rejecting "attempts to build cases based on inferences upon inferences and assumptions" where "the record simply does not support Plaintiff's claims" of pretext); *see also Phillis v. Harrisburg Sch. Dist.*, No. 07-cv-1728, 2010 U.S. Dist. LEXIS 31413, at *53 (M.D. Pa. Mar. 31, 2010).

### B. Poor Business Decision

Next, Mr. Cullen argues that it was a poor business decision to fire him. But "[p]retext is not demonstrated by showing simply that the employer was mistaken in its business judgment." *Grove v. H.E.F., Inc.*, No. 97-cv-373, 1998 WL 107179, at *3 (E.D. Pa. March 11, 1998). "Instead the record [must be] examined for evidence of inconsistencies or anomalies that could support an inference that the employer did not act for its stated reasons." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 731 (3d Cir. 1995). In support of this argument, Mr. Cullen points to two facts.

*First,* Mr. Cullen notes that less-tenured employees replaced him. This fact is irrelevant to the veracity of the proffered explanation. Mr. Cullen appears to be conflating "value" with "tenure." He has pointed to no facts explaining why the reorganization plan was nonsensical, nor

9

has he shown that his replacements provided less value for the same cost. As Mr. Watts's initial memo shows, a less experienced employee is usually a cheaper employee. For the merits of an employer's business decision to weigh on pretext, a plaintiff "must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Keller v. Orix Credit All.*, 130 F.3d 1101, 1109 (3d Cir. 1997); *see also Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999). Absent that type of showing, this information cannot "support an inference that the employer did not act for its stated reasons." *Sempier*, 45 F.3d, at 731,

***Second,*** Mr. Cullen argues he was generally a good employee and therefore should not have been fired. While relevant, the Court concludes that no reasonable jury could find that Mr. Cullen's performance shows that Select Medical's firing was pretextual. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981) ("[T]he fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination."). All sides agree that Mr. Cullen was an adequate employee. But to Select Medical, he was simply too expensive and he was not performing commensurate with his salary. Again, Mr. Cullen's generally good performance fails to show that Select Medical's explanation was pretextual. *See DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 170–71 (2d Cir. 1993) ("[I]n applying the *McDonnell Douglas* test to determine whether an employer's putative purpose is a pretext, a fact-finder need not, and indeed should not, evaluate whether a defendant's stated purpose is unwise or unreasonable."); *see also Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 137 (3d Cir. 2006) ("[A]s the Supreme Court has held, an employer need not refrain from carrying out a previously reached employment decision because an

employee subsequently claims to be engaging in protected activity."); *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (same). Therefore, Mr. Cullen's attempts to undermine Select Medical's business sense fall short.

### C. Inconsistent Stories

Mr. Cullen next points to allegedly shifting stories as to (a) the identities of decision-makers who fired Mr. Cullen, (b) reasons why Mr. Cullen was fired, and (c) whether his position was replaced or eliminated. To make these arguments, Mr. Cullen cherry-picks statements that barely differ and attempts to paint them as "shifting explanations." None of his selections are availing.

#### 1. *Identities of Decision-Makers*

Mr. Cullen emphasizes slight differences in the accounts of the parties involved in the decision to fire Mr. Cullen. Mr. Cullen paints this as a nefarious scheme to hide the decision-maker, but none of the differences are germane to the case. For example, in response to interrogatories, Select Medical provided a detailed discussion of how Randy Watts made the decision in conjunction with another supervisor and with the approval of their superiors. However, Mr. Watts testified at his deposition that he was the decision-maker.

Despite the slight differences in testimony, one thread is consistent: Select Medical has always stated that Mr. Watts decided to fire Mr. Cullen. Although different employees had different levels of input into the process (and the Court is confident that each party over-estimated how valuable his or her own input was to that process) all agree that it was Mr. Watts' decision. Indeed, "whether the ultimate decision was reached by [supervisors] cooperatively, by [one supervisor] with input from [another], or by [one supervisor] alone is a question of semantics. It has no bearing on the validity of the articulated reason" for the termination.

11

*Proudfoot v. Arnold Logistics*, 59 F. Supp. 3d 697, 705 (M.D. Pa. 2014). In other words, no reasonable jury could see these slight differences and infer a scheme to hide the identity of the decision-maker, nor has Mr. Cullen explained why this obfuscation would even be indicative of pretext. *Cf. Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 410 (E.D. Pa. 2000) ("[P]laintiff fails to identify just what that evidence is, how it supports his claims, or how it establishes pretext.").

*2. Inconsistent Reasons for Termination*

Mr. Cullen next claims that the reason for the termination changed over time. But this is also contradicted by the evidence. Mr. Cullen uses the same strategy to highlight slight differences in the explanation over time, but these miniscule differences do not evince pretext. For example, Mr. Cullen points out that when he was fired, he was told that he was fired solely because his position was being eliminated in the reorganization. However, in other instances, Select Medical claimed that Mr. Cullen's position was being eliminated *and* that his performance was not commensurate with his salary. As above, these distinctions are too minor to be relevant. Mr. Cullen was told that he fired because of the merger and reorganization. That was the *reason* why he was fired, but did not explain why it *made sense* to fire him. It made sense because Select Medical thought it could get better value for its money elsewhere. Mr. Cullen was not told this "reason behind the reason" until this litigation.

The Court finds that Select Medical's explanation — that Mr. Cullen was fired because his job could be more effectively done for less money by others — was consistent both before and after Mr. Cullen's termination. No reasonable jury could find otherwise. Select Medical wrote as much in a memo months before the firing and has continually argued as much throughout this litigation. Because there are no contradictions sufficient to raise suspicions with

12

respect to the credibility of Select Medical's proffered reason for termination, an inference of pretext is unwarranted. *See Lichtenstein*, 691 F.3d at 310. The fact that certain witnesses deviated in immaterial ways from that over-arching story does not evince any dishonesty, and it certainly does not suggest pretext sufficient to escape summary judgment.

      *3.     Inconsistent Explanation of Whether Mr. Cullen Was Replaced*

Finally, Mr. Cullen claims that Select Medical vacillates between saying that Mr. Cullen's position was *eliminated*, and saying he was *replaced* by two other employees. Mr. Cullen claims that this shifting explanation shows Select Medical's litigation explanation is pretext. Once again, Mr. Cullen has delineated a distinction without a difference. Mr. Cullen's position, as it was previously constituted, was eliminated, *and* Mr. Cullen was replaced by two employees doing the same (plus other) tasks. Therefore, this is not a shifting explanation, but rather two sides of the same coin. Even if there was a difference, it "is a question of semantics. It has no bearing on the validity of the articulated reason" for the termination. *Proudfoot*, 59 F. Supp. 3d at 705.

      **D.  Other Arguments**

Mr. Cullen makes three final arguments to support his claim of pretext. These arguments fail to "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.

First, he argues that there is no document prior to his disability that definitively stated that he would be fired. He claims that the July 2015 memorandum was simply a proposal, and there is no definitive proof that the proposal was adopted before Mr. Cullen's medical issues.

However, employers need not structure their plans in such formalistic ways, nor are they required to pause personnel plans simply because an employee becomes ill. *See Berridge v. Nalco Co.*, No. 10-cv-3219, 2014 U.S. Dist. LEXIS 11409, at *15–16 (D.N.J. Jan. 30, 2014) ("[An] employer is not required to suspend its termination proceedings just because the employee requests medical leave."). Moreover, few situations can be imagined in which there could be more definitive proof than a memorandum proposing restructuring like this. All parties agree that the plan was executed exactly as initially outlined in the memo, showing that it was more than mere conjecture, but instead functioned as the plan for the in-house personnel reorganization.

Second, Mr. Cullen notes that Select Medical waited to explain its termination timeline (and the fact that it had decided to fire Mr. Cullen before he went on medical leave) until after litigation had begun. Mr. Cullen paints this as a convenient litigating position. But quite the contrary is true. Employers generally do not tell their employees how long they have planned to fire them; for obvious reasons, those sentiments are kept a secret. It was not until Mr. Cullen requested this information in litigation that he received the background explanation. This fact therefore does not uncover a scheme to hide the truth, but simply demonstrates how workplaces and litigation operate. No reasonable jury could "believe that [this was] an invidious discriminatory reason [that] was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.

Finally, Mr. Cullen relies on the fact that he was the only person who took medical leave, and the only person fired, in his 13-person department. Such a statistical sample size is problematic. When looking at the company as a whole, close to 100 people were fired at the same time as Mr. Cullen. Mr. Cullen has presented no evidence of his colleagues' medical

14

statuses, and therefore cannot show that a disparate number of individuals on medical leave were fired as part of this termination. Given that he has shown no animus directed toward him, this small statistical sample size cannot stand alone for any useful purpose.

## CONCLUSION

For these reasons, no reasonable jury could find that Mr. Cullen was fired because of his disability or in retaliation for taking medical leave. Therefore, the Court grants the motion for summary judgment. An appropriate order follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE